Andrew KONEN, M.D., Appellant

v.

Greta BASS, Appellee.

No. 05–06–01116–CV.

Court of Appeals of Texas, Dallas.

Aug. 15, 2007.

William Connor Dunnill and Joel J. Steed, Steed Flagg, LLP, Rockwell, TX, for Appellant.

Jay Harvey, Austin, TX, for Appellee.

Before Justices WRIGHT, RICHTER, and LANG.

## OPINION

Opinion by Justice RICHTER.

This is a medical negligence case pertaining to the expert report requirements

of the Medical Liability and Insurance Improvement Act of Texas ("MLIIA"). TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2006). In a single multi-part issue, Andrew Konen, M.D. challenges the trial court's denial of a motion to dismiss for failure to provide a sufficient expert report. For the reasons below, we conclude that the report constituted a good faith effort to comply with the requirements mandated by statute and affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Greta Bass filed a medical negligence claim against Dr. Konen alleging injury from the improper placement of a spinal column stimulator and IPG battery surgically implanted for pain management. Specifically, Bass asserted that the placement of the battery in her right buttock interfered with her every day living activities, including sitting, sleeping, and driving. According to Bass, Dr. Konen was negligent because he failed to place the battery in an area that would make the battery pack viable and usable, which resulted in two additional surgeries; one for the removal of the battery pack, and one for removal of scar tissue. Bass also asserted that she suffered additional neurologic complications as a result of Dr. Konen's negligence.

The expert report and curriculum vitae of Dr. Lawrence Schaeffer were served with the original petition. Dr. Konen objected to the report, and then supplemented his objections. After an associate judge conducted a hearing and overruled Dr. Konen's objections, Dr. Konen appealed to the trial court. Dr. Konen also filed a motion to dismiss that he later supplemented. Bass responded to both motions. Following a hearing, the court overruled the objections and denied the motion to dismiss. This interlocutory appeal followed.

## II. EXPERT REPORT

### A. Applicable Law and Standard of Review

We review a trial court's ruling on a motion challenging an expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878–79 (Tex. 2001); *Eichelberger v. Mulvehill,* 198 S.W.3d 487, 489 (Tex.App.-Dallas 2006, pet. denied). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Lookshin v. Feldman,* 127 S.W.3d 100, 103 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Absent clear abuse, the trial court's discretion is undisturbed. *See Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996).

A plaintiff asserting a health care liability claim is required to serve one or more expert reports and a curriculum vitae for each health care provider or physician against whom a liability claim is asserted. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2006). The expert report is to include: (1) a fair summary of the expert's opinions about the standard of care; (2) the manner in which the care failed to meet the standard; and (3) the causal relationship between the failure and the claimed injury. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2006); *Palacios,* 46 S.W.3d at 878; *Ballan v. Gibson,* 151 S.W.3d 281, 283 (Tex.App.-Dallas 2004, no pet.). The report must fulfill a dual purpose; it must notify each defendant of the specific conduct called into question, and it must provide support for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.

2002). The court's adequacy analysis is limited to the four corners of the curriculum vitae and report. *See Windsor v. Maxwell,* 121 S.W.3d 42 (Tex.App.-Fort Worth 2003, pet. denied). The failure to provide an adequate expert report in the time and manner proscribed by statute requires dismissal of the lawsuit. *See Broom v. MacMaster,* 992 S.W.2d 659 (Tex.App.-Dallas 1999, no pet.).[1]

With respect to a person giving opinion testimony on whether a physician departed from accepted standards of medical care, an "expert" is a person qualified to testify under the requirements of section 74.401. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5) (Vernon Supp.2006). "In determining whether a witness is qualified to testify on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is board certified or has other substantial training or experience in an area or medical practice relevant to the claim; and (2) is actively participating in rendering medical care relevant to the claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(c) (Vernon Supp.2006).

■■ A defendant may also challenge the adequacy of an expert report because it fails to demonstrate that the person rendering the opinion is qualified to testify. *In Re Windisch,* 138 S.W.3d 507, 511 (Tex.App.-Amarillo) (orig.proceeding). If a report fails to establish that an expert is qualified to render the opinions expressed in the report, the report is inadequate. *In Re Samonte,* 163 S.W.3d 229, 235 (Tex. App.-El Paso 2005) (orig.proceeding).

### B. *Expert Qualifications*

■ Both parties agree that the placement of the spinal column stimulator is the care at issue in this case. But Dr. Konen maintains that Dr. Schaeffer's's report and curriculum vitae fail to establish that Dr. Schaeffer is qualified to render an opinion on the standard of care. Dr. Konen focuses on the surgical aspects of placement, arguing that according to the report, Dr. Schaeffer only indicates he is qualified to render opinions on the care and treatment of patients following the implantation of a stimulator. The single statement upon which Dr. Konen focuses, however, cannot be read in a vacuum. In the third paragraph of the report, Dr. Konen describes the nature of his practice and sets forth the standard of care. When this paragraph is read in conjunction with the remainder of the report, including the statement Dr. Konen attacks, it is clear that Dr. Schaeffer has sufficient expertise to render the opinion he offers.

As stated in his report, Dr. Schaeffer is licensed by the State of Texas to practice medicine, is board certified in neurology and internal medicine, and has been engaged in the practice of neurology since 1990. His practice includes the treatment of patients with painful neuropathic disorders and the management and treatment of patient's with spinal column stimulators.

Dr. Schaeffer reports that Bass has been his patient since October 10, 2000. He saw Bass on January 7, 2004 to remove staples ten days after the placement of her stimulator. He saw her again on May 3, 2004, after the explantation of the stimulator. Dr. Schaeffer states he is qualified to render an opinion regarding "the care and treatment of patients presenting with

---

1. *Broom* was decided under former article 4590i of the Texas Revised Civil Statutes. The Texas Legislature repealed Article 4590i in 2003, and moved amended portions to Chapter 74 of the Texas Civil Practice & Remedies Code. *See* Act of June 2, 2003, 78th Leg. R.S., Ch. 204, § 10.01, 2003 Tex.Gen Laws 847.

complication following implantation of a spinal column stimulator as was used for Greta Bass." With regard to the standard of care, Dr. Schaeffer opines: "[t]he standard of care requires the battery pack to be placed in an area of least interference with the patient to allow for maximum effectiveness of the spinal cord stimulator and to minimize the irritation to the patient." The report then explains how Dr. Konen allegedly breached the standard of care by placing the stimulator in an area that was obtrusive to the patient's everyday living activities. After Bass complained that the stimulator was not working and the battery was obtrusive, Dr. Schaeffer recommended that it be removed by the surgeon who implanted it. As he continued to treat Bass, he observed the complications resulting from the location of the battery pack. When the device was removed, Dr. Schaeffer observed a significant amount of scar tissue causing neurologic symptoms of sciatica along the area of the explant site. He continued to observe symptoms that developed secondary to and caused by the scar tissue, and opines that these symptoms developed because of the inappropriate location of the battery.

Dr. Konen asserts Dr. Schaeffer is not qualified to offer an expert opinion in this case because Dr. Schaeffer is not a surgeon and has never performed the surgical procedure of inserting a spinal cord stimulator. We disagree. As the trial court correctly recognized, it is the choice of location of the battery rather than the surgical insertion that is at issue in this case. Dr. Schaeffer need not have ever surgically implanted a stimulator to observe the complications resulting from placement.

▮ Moreover, the statute does not require that the expert be practicing in the same field as the defendant health care provider. A medical witness from one practice area may be qualified to testify if he has knowledge of what is customarily done by other practitioners under circumstances similar to those at issue in the case. *See Keo v. Vu,* 76 S.W.3d 725, 732 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *Keeton v. Carrasco,* 53 S.W.3d 13, 25–26 (Tex.App.-San Antonio 2001, pet. denied); *Marling v. Maillard,* 826 S.W.2d 735, 740 (Tex.App.-Houston [14th Dist.] 1992, no writ). Thus, the test for determining whether an expert is qualified to opine on the standard of care is whether the expert is qualified on the specific issue in the case. *See Broders,* 924 S.W.2d at 152; *Roberts v. Williamson,* 111 S.W.3d 113, 121 (Tex.2003). The trial court's conclusion that Dr. Schaeffer meets this test was not erroneous.

As established in his report, Dr. Schaeffer manages and treats patients with stimulators and makes recommendations concerning the implantation of stimulators. In the course of treating Bass and observing the complications she experienced, Dr. Schaeffer recommended that the device be explanted. The report established that Dr. Schaeffer has knowledge about and experience in the practice area about which he opined. As a physician involved in the care and treatment of patients with stimulators and battery packs, Dr. Schaeffer was qualified to render an opinion on how the placement of Bass's stimulator deviated from the standard of care.

### C. *Causation*

▮ Dr. Konen also contends the report is inadequate because it fails to provide evidence of the causal relationship between the breach and the harm. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2006). The trial court determined that the requisite causal connection was not lacking. Based

**559**

on our review of the record, we conclude this determination was not an abuse of discretion.

 To constitute a good-faith effort to establish the causal-relationship element, the expert report must satisfy the two-part *Palacios* test. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52. The expert must explain the bases of the statements made regarding causation and link his or her conclusions to the facts. *See Longino v. Crosswhite*, 183 S.W.3d 913, 917–18 (Tex.App.-Texarkana 2006, no pet.).

Dr. Schaeffer opines that if the battery pack had not been placed in the location where it was implanted, Bass would not have developed the scar tissue that resulted in the sciatic nerve damage she developed. Dr. Schaeffer further opines that but for the improper location of the battery pack, Bass would not have required additional surgeries to remove the battery pack and excise the scar tissue. The trial court did not err when it found these statements sufficient to demonstrate causation. Having resolved Dr. Konen's issue against him, we affirm the trial court's order.